GARY M. RESTAINO
United States Attorney
District of Arizona
NATHANIEL J. WALTERS
MONICA E. RYAN
Assistant United States Attorneys
United States Courthouse
405 West Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Nathaniel.Walters@usdoj.gov
Monica.Ryan@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>               Plaintiff,<br><br>vs.<br><br>Maurice Fitzgerald Alexander, Jr.,<br><br>               Defendant. | CR-21-02972-JAS-EJM<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

Now comes the United States of America, by and through its undersigned attorneys, and hereby submits the following sentencing memorandum about the defendant, Maurice Fitzgerald Alexander, Jr. (Alexander).

**I.     FACTUAL BACKGROUND**

On October 4, 2021, the victim contacted law enforcement and reported she had been sex trafficked. After being taken to a local hospital, a joint investigation between Homeland Security Investigations (HSI) and the Tucson Police Department (TPD) began.

The victim initially ran away from her guardian in Nebraska on August 6, 2021. At the time, the victim was 14 years old. The victim then traveled to Phoenix, Arizona, where she eventually found herself homeless. Around this time, Alexander, or "Money Moe," contacted the victim through social media and offered her employment. The victim agreed to meet with Alexander the next day to discuss the job details. After meeting the first day, the victim met with Alexander for the second day in a row. After Alexander picked the

victim up, he drove her to a hotel room and raped her so that he could see how she would perform. That night, after Alexander raped the victim, Alexander sent in five to ten men who paid money to have sex with the victim.

After that night, Alexander provided the victim with a list of rules. These rules required, among other things, that the victim always share her location with Alexander, earn $1,000 per day, and post content online to advertise. After two nights in the hotel, Alexander drove with the victim to Sky Harbor International Airport to pick up Alexander's co-defendant, Erica Lucia Navarro (Navarro). The three then traveled to an apartment in Tucson, where they worked and lived for the following month. Alexander and Navarro created a social media account where the victim was required to post sexual content and respond to requests for "dates." During this time, Alexander and Navarro also provided the victim with drugs to stay awake and earn more money.

According to the victim, when she did not make enough money for Alexander, he would become angry and would punish the victim. According to the victim, Alexander would say derogatory things to her, punish her, withhold food, etc. until she met his demands. Alexander would also threaten to leave the victim in a rundown motel where, even as a 14–15-year-old, she knew she would feel unsafe. Alexander also required the victim and Navarro to call him "Daddy." Alexander had sex with the victim throughout the two-month period the victim was living with him. The victim stated that Alexander demanded vaginal and oral sex; the victim stated she complied because she was afraid to say no.

The victim's text messages demonstrated the level of control Alexander exerted over her. The phone verified that the victim shared her location with Alexander, but they also showed the victim requesting permission to sleep, eat, or buy basic hygiene products. Law enforcement was also able to see that the escort ads featuring the victim had sexually explicit photographs of the victim and were posted in Tucson, along with cities in Colorado, Texas, and New Mexico. Alexander forced the victim to photograph herself

while engaged in sexual conduct that Alexander would then use as advertisements for services as well as material to be sold to customers.

On October 22, 2021, Alexander was arrested by HSI and TPD. In a post-*Miranda* statement, Alexander stated he earned money doing side jobs, such as landscaping and painting, and that he was in Tucson for court related to human trafficking allegations. During the investigation, law enforcement learned that Alexander was a registered sex offender from a prior conviction in Nashville, Tennessee, for promoting prostitution.

## II.     PROCEDURAL BACKGROUND

On May 22, 2024, Alexander was found guilty after a jury trial on the following charges:

Count 1 – Conspiracy to Commit Sex Trafficking of a Minor Using Force, Fraud, and Coercion;

Count 2 – Sex Trafficking of a Minor by Force, Fraud, and Coercion;

Count 3 – Transportation with Intent to Engage in Criminal Sexual Activity[1];

Count 5 – Production of Child Pornography;

Count 6 – Commission of Offense as Registered Sex Offender.

(Doc. 162). The United States has no objection to the Presentence Report (PSR) Guideline calculation of 48 and the calculation of a Criminal History Category (Doc. 183 at ¶¶ 29-72, 78-79). The United States also agrees with the PSR in that because the total offense level is 48, it shall be treated as a total offense level of 43. U.S.S.G. Chapter 5, Pt. A n.2. For Counts 1-3 and 5, the Sentencing Guidelines call for a life sentence. (Doc. 183 at 22). For Count 6, 18 U.S.C. §2260A requires the Court to sentence Alexander to 10 years in prison, all of which must be consecutive to any other sentence of imprisonment. Alexander will have served 1,028 days in custody at the time of sentencing. (Doc. 183 at 2). The PSR recommends a sentence of life in prison plus ten consecutive years followed by lifetime

---

[1] Count 4 of the Indictment, which charged Alexander with Coercion and Enticement, was dismissed by motion of the government prior to trial. (Docs. 136, 137).

supervised release. (Doc. 183 at 2). The United States, having reviewed the findings and information contained in the PSR, respectfully recommends a sentence of life imprisonment plus a consecutive ten years followed by lifetime supervised release.

### III. LAW & ARGUMENT

The goal of sentencing is to achieve a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). In doing so, the Court must account for various factors specific to the defendant and case. Accordingly, the framework for determining an appropriate sentence is outlined in § 3553(a). In particular, § 3553(a) requires that the Court ensure the sentence imposed properly considers, among other factors: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense; (4) the need to afford adequate deterrence; (5) the need to protect the public from further crimes of the defendant; (6) the needs to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to the victims of the offense.

Based on the facts of this case and Alexander's criminal history, a sentence of life in prison plus ten consecutive years is appropriate. First, the United States notes that the victim believes that life in prison is appropriate based on Alexander's "treatment of [the victim] and the long-term impact it will have on her life." Alexander was cruel in his treatment of the victim. (Doc. 183 at ¶ 23). Although Alexander has the absolute right to go to trial, he always intended to put the victim through the trauma of testifying. For example, in July of 2022, in a letter to Navarro, Alexander stated, "[L]ook this shit aint (sic) about to be over no time soon im (sic) not about to sign for shit right now ill go to trial an (sic) when that day come ill tell my lawyer to keep asking for more time this cases (sic) going to go on 2 or 3 years before anything changes . . . ." In a subsequent letter to Navarro, Alexander also stated, ". . . but like i (sic) said it aint over i (sic) aint sign for no time we still can get out of this . . . . you out everything should be good I know i (sic) am going to be lock (sic) up another year or 2 because i (sic) am not sign shit i (sic) really believe i (sic)

can beat this . . . ." The emotional toll the victim sustained by testifying should be taken into consideration, as Alexander has <u>never</u> accepted any responsibility for his actions.

Second, Alexander trafficked the victim, a 14-15-year-old child, to make money. At best, Alexander deliberately ignored the multitude of red flags that undoubtedly showed the victim was a minor. At worst, he knew the victim was a minor and continued to traffic her to make money. The victim also testified at trial about the sexual assaults perpetrated against her by Alexander, and he routinely used the victim as a piece of property. The level of control Alexander exerted over a highly vulnerable child was tremendous. The victim was not able to eat, sleep, contact friends or family, or stop working as a prostitute unless Alexander first gave her permission.

Finally, Alexander's entire adult life has involved committing crimes to make money, and this conviction represents Alexander's third felony conviction. In 2008, Alexander was convicted of Aggravated Robbery and Attempted Aggravated Robbery. In that case, Alexander brandished a firearm to take property from another person. In 2015, Alexander was convicted of Promoting Prostitution. It was this offense that required Alexander to register as a sex offender. Finally, in 2020, Alexander was charged in an unrelated case with additional charges related to promoting prostitution.

The 3553(a) factors three, four, and five provide that the sentence should provide just punishment while promoting respect for the law, ensuring the public's safety, and deterring similar crimes. There is a strong need to deter this violence against trafficking in juvenile girls. In addition, pimps like Alexander need to understand that they will face stiff penalties when they lure juvenile girls and young women into prostitution. Furthermore, Alexander has shown that he has little respect for the law. At this point, Alexander has demonstrated that he is a significant risk to the community. His entire adult life has consisted of victimizing other people for his financial gain. As such, the only appropriate sentence to protect the community from Alexander's criminality is life imprisonment.

///

## IV. **RESTITUTION**

The United States anticipates that the victim will request restitution; however, the victim requires additional time to prepare materials. The United States, therefore, requests that the Court set a restitution hearing 90 days after sentencing. Counsel for the defendant has no objection to this request.

## V. **CONCLUSION**

Based on the analysis of the factors under 18 U.S.C. § 3553 and the heinous nature of this crime committed by Alexander, the United States respectfully requests that the Court sentence Alexander to life in prison plus ten consecutive years followed by lifetime supervised release. The supervised release condition should include, along with the standard and special conditions recommended in the PSR, no direct or indirect contact with the victim or other witnesses in this case.

Alexander, through his actions in this case, has demonstrated that he will forever be a significant risk to the safety of vulnerable women and children in any community in which he resides. Life imprisonment is the only appropriate sentence to ensure the safety of the community from Alexander and his criminal mindset.

Sentencing is currently set for August 14, 2024.

Respectfully submitted this 7th day of August 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

s/ *Nathaniel J. Walters*
s/ *Monica E. Ryan*

NATHANIEL J. WALTERS
MONICA E. RYAN
Assistant United States Attorneys

Copy of the foregoing served electronically or by other means this 7th day of August 2024, to:

All ECF Participants

- 6 -